## Hunt v. Commonwealth.

October 31, 1950.

Eldred E. Adams, Special Judge.

W. A. Daugherty for appellant.

A. E. Funk, Attorney General, W. Owen Keller, Assistant Attorney General, for appellee.

JUDGE KNIGHT—Affirming.

Under an indictment for murder, appellant was convicted of voluntary manslaughter and his penalty fixed at twelve years in the penitentiary. He appeals from that judgment, asking reversal on two grounds: (1) that the court erred in failing to sustain his motion for peremptory instructions; (2) improper argument of the Commonwealth's Attorney.

The case follows the pattern of many killings in the mining section and had its origin in a dispute over a glass jar of "moonshine" whiskey. Appellant and the deceased, Cecil Belcher, were friends, lived only a few miles apart, worked in the same mining operation, and had never before had any trouble. According to the testimony of the Commonwealth, the deceased, Cecil Belcher, his son, Sidney Belcher, his brother-in-law, Mallard Williams, and the latter's brother, Inard Williams, went to the home of appellant on Saturday night, December 10, 1949, the purpose of the visit, according to most of the testimony, being to obtain some whiskey from appellant. Cecil Belcher and Mallard Williams had gone to the grocery in the afternoon and, as they returned, left part of these groceries at Belcher's home. However, they kept in the car they were using some eggs, bacon and honey and, after picking up Inard Williams and Sidney Belcher somewhere on the way, they proceeded to appellant's home, arriving there after dark, between six and seven o'clock. Upon their arrival, they knocked on the door and were admitted. In the house were appellant, Loy Hunt, his wife Eva, four or five of their children, and Mrs. Hunt's brother and cousin, Edgar and Malcolm Abshire. Shortly after their arrival, Cecil Belcher asked appellant for a quart of whiskey, whereupon appellant produced a half gallon jar full which deceased agreed to purchase for $8.00. Some of those present, including appellant and de-

ceased, drank part of it and the remainder was left in charge of Mallard Williams who sat down behind the stove in the living room with the whiskey beside him while Cecil proceeded to cook some eggs. There is conflicting testimony as to whether the eggs were cooked on the heating stove in the living room or in the kitchen, where they were eaten, and whether appellant participated in the cooking and eating. At any rate, after the eggs were eaten, Cecil Belcher asked for and obtained from Williams the jar of whiskey, which the latter was keeping for him, and was proceeding toward the door with it in his hand. Appellant's wife Eva asked appellant if he had gotten any money for the whiskey and appellant said no, that Belcher said he would pay him on his next pay day as he always did. Eva Hunt then said to Belcher, "By God, we have to have the money before it leaves here. You aren't pulling that stuff on me." After brushing her aside with his left hand with the whiskey in his right hand, Belcher walked on out the door. Eva loaded the shotgun and set it in the corner. Appellant got the gun and proceeded toward the door, saying "No God damned son of a bitch is going to do that to me." He then followed Belcher out in the yard and shot him with the shotgun, killing him instantly. He returned and announced that he had killed Cecil and they had better go take him away. All the testimony of the Commonwealth was that the deceased was not armed and his wife testified that he did not own a pistol.

The story of the killing, as told by defense witnesses, presents an entirely different picture. According to that testimony, deceased, Cecil Belcher, and the party that was with him came to appellant's door on the Saturday night in question, rapped on the door, which was latched from the inside, and said, "Open up this God damned door. If you don't, we'll knock it down." Before it could be unfastened, they pushed through it, breaking the latch, and came on in. They appeared to be under the influence of liquor. Cecil Belcher insisted that Eva Hunt cook the eggs and bacon he had brought with him, but she refused because she said she had been sick for a week and had not been able to cook for her own family. He then said, "By God, then I'll fix them myself," which he proceeded to do. After eating the eggs in the kitchen, he came back in the living room

and got his whiskey from Mallard Williams and said, "By God, let's make some hot toddies." Eva Hunt told him if he fixed any toddies in her house, she would get the law after him. She told him to leave the place. He said, "By God, I'm not going." He then slapped her back onto the bed and pulled a pistol out from under his shirt. Appellant ordered him to get out. Deceased then went out the door into the yard and was looking in the window. Appellant followed him and said, "Get off my possession." Whereupon deceased answered, "God damn your possessions," and grabbed his pistol. Appellant then shot him with the shotgun. Appellant denied that he ever sold the deceased or any of his party any liquor and said that the liquor which deceased had in his house was brought there by him.

There was a good deal of testimony given by the various parties present, which included that of three young boys, other than those heretofore named, who had come to appellant's place shortly before the shooting occurred. Much of the testimony was immaterial and was, of course, conflicting, depending on which side they were testifying for. However, the resume of the testimony as given above fairly presents the two sides of the issues involved and shows clearly that the question of fact presented is purely a jury question. Two well defined theories of the case were presented by the evidence; that of the Commonwealth, that deceased went unarmed to the home of appellant to buy liquor from him and was unnecessarily killed when an argument arose as to how it should be paid for; and that of the defense, that deceased, already drinking, burst into appellant's house, ordering his wife to cook some food for him, then drawing a gun when ordered out of the house, and that appellant killed him in self-defense. These issues were presented to the jury under proper instructions and it was for the jury to determine the credibility of the witnesses and to decide whether deceased was killed without justification or excuse, or whether he was killed in necessary self-defense. After a careful reading of all the testimony, we are of the opinion that the lower court did not err in refusing to sustain appellant's motion for a peremptory instruction in his favor.

The other ground complained of is improper argument of the Commonwealth's Attorney. Appellant does

not point out the particular language of which he complains, but has had copied in the bill of exceptions most of the argument of the Commonwealth's Attorney. Two statements in the argument to which he made objection at the time, and which objections were overruled, are probably the ones on which he bases his complaint. In one of these, he said, "He went up there that night because he knew he could get some whiskey." In the other, he said, "If he had gotten paid for that whiskey, everything would have been all right. But he didn't get paid for it and the death penalty was inflicted." In the closing paragraph of the argument, the statement was made, "I beg of you and urge you, don't send this man back up there to sell whiskey and then take their lives if they don't pay him for it like he did this man. I beg of you * * * to write the death penalty in this case." No particular objection was made to this last statement, but at the close of the entire argument appellant's counsel moved the court to set aside the swearing of the jury and continue the case on account of the inflammatory argument of opposing counsel, which motion was overruled.

In ordinary murder cases, where the selling of liquor is not directly involved and where reference to bootlegging or unlawful selling of whiskey by the defendant is apparently lugged into the case to prejudice the jury, we have not hesitated to condemn that practice and to even reverse the judgment for that reason. However, in this case the whole question revolves around the question of the sale of liquor, whether it was bought from appellant, whether it was to be paid for then or sold on credit until the next payday and whether the argument resulting from this dispute led to the killing. Under the circumstances and proof in this case, we do not think the statements of the Commonwealth's Attorney were out of line or were outside the record or that they were prejudicial to appellant. We have carefully read the remainder of the closing argument, which is too long to set out here, but we find nothing therein that goes outside the record or that is improper or inflammatory. We think the court did not err in refusing to discharge the jury for the reason complained of.

On the whole case, the defendant received a fair

806

trial and was given a penalty less than he could have received and we find no errors which justify a reversal of the case. Wherefore the judgment is affirmed.